UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

DDMD TRUCKING, INC.,                                                No. 14-12511-ta11

      Debtor.

## MEMORANDUM OPINION

Before the Court is a motion of five creditors to transfer the venue of this Chapter 11 case to Midland, Texas.[1] The Court held a final hearing on the motion on December 11, 2014 and took evidence. Considering all facts relevant to this particular case, the Court finds that the motion should be denied.

### I.     FACTS

The Court finds the following facts:[2]

DDMD Trucking, Inc. ("Debtor") filed a voluntary Chapter 11 petition on August 20, 2014 in the District of New Mexico. Debtor provides trucking and transportation services to move and set up drilling rigs in Colorado, New Mexico, and Texas oil fields.

Debtor was incorporated in Colorado in 2006. Initially, Debtor's principal place of business was in Trinidad, Colorado. Debtor moved its headquarters to Texas in February, 2009, where it remained and performed the bulk of its work until the fall of 2013.

---

[1] Midland is in the Western District of Texas. During closing argument, movants stated that their second choice would be to transfer venue to Amarillo, Texas (Northern District of Texas).

[2] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr.N.D.Ill.2013), *affirmed*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

In about October, 2013, Debtor and its owners/managers David Duran and Michelle Gutierrez moved to Hobbs, New Mexico.[3] Debtor leased a house in Hobbs from October 2013 until September or October of 2014. Duran and Gutierrez lived in the house during this period and operated the Debtor from the house. Debtor received its mail at the Hobbs house address or at a post office box in Hobbs. Between October, 2013 and September, 2014, nearly all of Debtor's work and assets (mostly trucks, trailers, and similar rolling stock) were in New Mexico.

Debtor began moving equipment from New Mexico to Amarillo, Texas in July of 2014. Debtor moved the equipment over time, as Debtor's Texas work increased and New Mexico work diminished. During this transition period, Debtor continued to operate from the Hobbs rental house. However, by the time Debtor filed its bankruptcy petition in August, 2014, most of Debtor's equipment had been moved to Amarillo.

Currently, about 75% of Debtor's assets are in Amarillo, with the balance in Trinidad. Debtor has now moved its headquarters from Texas back to Trinidad, where Duran and Gutierrez currently reside.

The claims register for this case reveals the following:

| Claim # | Creditor | Claim amount | Creditor domicile | Attorney address |
|---|---|---|---|---|
| 1 | IRS | $95,033 | Philadelphia, PA | Phoenix, AZ |
| 2 | Trans-Expedite Oilfield Services | $61,285 | El Paso, TX | El Paso, TX |
| 3 | Mega Oil | $22,230 | Kilgore, TX | Tyler, TX |
| 4 | Grider Trucking | $32,718 | Sonora, TX | Odessa, TX |
| 5 | New Mexico Tax. and Rev. | $5,897 | Albuquerque, NM | Albuquerque, NM |
| 6 | O'Ryan Heavy Haul | $66,687 | Odessa, TX | Midland, TX |

---

[3] Due to the nature of the oil industry, service companies like Debtor follow available work from field to field. Mr. Duran testified that Debtor's various relocations over the years were because "that's where the work is, I chase oil rigs." Movants did not dispute that Debtor moved its assets and principal place of business to follow oil-field work, and the Court finds the testimony credible.

| 7 | Acorn Petroleum | $24,749 | Colorado Springs, CO | |
| 8 | Felix Chaves & Son Constr. | $1,550 | Midland, TX | Scottsdale, AZ (collection agency) |
| 9 | John Deere | $168,388 | Johnston, IA | Lubbock, TX |
| 10 | Benchmark Logistic | $56,220 | Houston, TX | Houston, TX |
| 11 | Silverline Energy Services | $463,563 | San Antonio, TX | San Antonio, TX |
| 12 | Zaclyn Logistics | $194,904 | Midland, TX | San Antonio, TX |

Eight creditors are domiciled in Texas, although only five of the eight are in the Western District of Texas.[4] Of the four non-Texas creditors, one is domiciled in each of Pennsylvania, Colorado, Iowa, and New Mexico.

Midland would be convenient for three of the Texas creditors (O'Ryan, Felix Chaves & Son, and Zaclyn Logistics) but is a long way from the others. For example, Midland is about 305 miles from El Paso, 325 miles from San Antonio, and 478 miles from Houston. The following table shows average distances the parties and their counsel would have to travel to the three courthouses in the districts under consideration:[5]

| | Average Distance from Albuquerque | Average Distance from Amarillo | Average Distance from Midland |
|---|---|---|---|
| Parties (including debtor) | 609 | 497 | 461 |
| Counsel (including debtor's counsel) | 435 | 420 | 374 |
| Combined Average | 522 | 459 | 417 |

---

[4] One of the Texas creditors is domiciled in the Southern District, one in the Eastern District, and one in the Northern District.

[5] Though neither side offered evidence of the distances between the parties and the relevant courthouses, the Court has taken judicial notice of these facts. The court calculated the distances using Google and/or Bing Maps, using the domiciles shown in the proofs of claim (or, if no address was given for the creditor, using the address in Debtor's bankruptcy schedules). As the Court has not given the parties an opportunity to object to taking judicial notice of the distances, it does so now. *See* Fed. R. Evid. 201(e) & (f). Any party objecting to taking judicial notice of the distances, or to the facts noticed, must file an objection within seven days after entry of this opinion. Parties who do no object within seven days waive their opportunity to do so. *Id.*

## II. DISCUSSION

A. <u>Venue Was Proper on the Petition Date</u>.

28 U.S.C. § 1408 provides:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district--
    (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
    (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Whether venue is proper is determined by an investigation of "the facts existing within the 180-day period prior to the filing of the bankruptcy petition." *Mont. Dept. of Rev. v. Blixseth (In re Blixseth)*, 484 B.R. 360, 365 (9th Cir. BAP 2012).

Under § 1408(1), venue is proper where any one of the four bases exists either for the 180 days before filing or for "a longer portion of such one-hundred-and-eighty-day period . . . [than] in any other district." 28 U.S.C. § 1408(1). *See also In re Blixseth*, 484 B.R. at 365 (citing *Broady v. Harvey (In re Broady)*, 247 B.R. 470, 472 (8th Cir. BAP 2000).

"Venue statutes 'speak[] to an appropriate, geographically identified forum for the effective administration of the bankruptcy process.'" *In re Blixseth*, 484 B.R. at 365 (citing *In re Murrin*, 461 B.R. 763, 782 n. 36 (Bankr. D. Minn. 2012), *rev'd on other grounds*, 477 B.R. 99 (D. Minn. 2012)).

    1. <u>Debtor's Principal Place of Business</u>. "The location of a debtor's principal place of business is a question of fact." *Commonwealth of P.R. v. Commonwealth Oil Ref. Co., Inc. (In re Commonwealth Oil Ref. Co., Inc.)*, 596 F.2d 1239, 1241 (5th Cir. 1979) (referred to herein as

"*CORCO*"), *cert. denied*, 444 U.S. 1045 (1980) (decided under the former Bankruptcy Act); *In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 793 (7th Cir. 1998) (citing *CORCO*). The Supreme Court has held "that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The Supreme Court described a corporation's principal place of business as its "nerve center," noting that it is "a single place. . . . And it is a place within a State." *Id.* at 93.

The 180-day pre-filing period started February 21, 2014. The evidence makes clear Debtor operated from Hobbs, New Mexico during all or almost all of the pre-filing period, and thus had its principal place of business in New Mexico.

2. Principal Assets. The location of a debtor's principal assets is also a question of fact. *See In re HME Records, Inc.*, 62 B.R. 611, 613 (M.D. Tenn. 1986) (physical presence of 400 master tapes of music artists' recordings within the district made venue proper based on location of debtor's principal assets). When the principal assets of a debtor are tangible items such as trucks and equipment, a court should look to where the assets were physically present during the 180 days before filing. *See id.* Here, almost all of Debtor's assets were in New Mexico from late 2013 until at least July, 2014. Even assuming Debtor moved all of its assets to Texas in July, 2014, the venue requirement is still met, as the assets would have been in New Mexico for between 130-160 days of the 180-day pre-petition period.

The Court finds that venue for this bankruptcy case was and is proper. Although Debtor is not domiciled in New Mexico and does not reside here, its principal place of business and principal assets were in New Mexico under the test set out in 28 U.S.C. § 1408.

B. <u>Transfer of Venue</u>.

Even though venue is proper, it is still within the Court's discretion to transfer a case to a different venue:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412. Bankruptcy Rule 1014(a)(1) provides:

> (a) Dismissal and transfer of cases
>   (1) Cases filed in proper district
>      If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.[6]

    1. <u>General</u>. The phrases "in the interest of justice" and "for the convenience of the parties" give alternate grounds to transfer venue. *In re Enron Corp.*, 284 B.R. 376, 385–86 (Bankr. S.D.N.Y. 2002).

The party seeking transfer bears the burden of proof and must carry that burden by a preponderance of the evidence. *See Peachtree Lane Assocs., Ltd*, 150 F.3d at 792; *Hilgendorf v. Rockport Nat'l Bank (In re Wheeler)*, 69 B.R. 29, 31 (Bankr. D.N.M 1986); *Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 874 (Bankr. S.D. Ohio 2011).

Transferring venue of a bankruptcy case is not to be taken lightly. *In re Enron Corp.*, 284 B.R. at 386; *CORCO*, 596 F.2d at 1241 ("the court should exercise its power to transfer cautiously"). A venue transfer is a "'cumbersome disruption of the Chapter 11 process.'" *See In re Enron Corp.*, 284 B.R. at 386 (quoting *In re Pavilion Place Assocs.*, 88 B.R. 32, 35 (Bankr. S.D.N.Y 1988)).

---

[6] It does not have to be a district where the debtor could have commenced a case. *See, e.g., Thompson v. Greenwood*, 507 F.3d 416, 422 (6th Cir. 2007)

The district where a debtor files, if proper, "is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2nd Cir. 1990). The party seeking transfer must present sufficient evidence to rebut this presumption. *Id.* at 1390. "A debtor's choice of forum is entitled to great weight if . . . venue is proper." *In re Enron Corp.*, 284 B.R. at 386 (citing *In re Ocean Props. of Del., Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988). "'Where a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed.'" *In re Garden Manor Assocs., L.P.*, 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988) (quoting 1 J. Moore, *Moore's Federal Practice* ¶ 0.145[5] at 1616 (2d ed.1988)). "'[A] heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor.'" *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (quoting *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc., (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982).

"The decision to transfer requires an examination of a broad array of factors, and a bankruptcy court's decision denying or transferring venue will only be reversed if the court's decision constitutes an abuse of discretion." *In re Enron Corp.*, 284 B.R. at 387 *(citing In re S.O.S. Sheet Metal Co.*, 297 F.2d 32 (2d Cir. 1961).

   2. <u>In the Interest of Justice</u>. The first basis for transferring venue is if the transfer is "in the interest of justice." 28 U.S.C. § 1412; Fed.R.Bankr.P. 1014(a)(2). This is an "extraordinarily nebul[ou]s concept." *In re W. Coast Interventional Pain Med., Inc.,* 435 B.R. 569, 583 (Bankr. N.D. Ind. 2010). "The 'interest of justice' prong is 'a broad and flexible

standard which must be applied on a case-by-case basis.'" *A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998) (quoting *In re Manville Forest Prods. Corp.*, 896 F.2d at 1391. Factors considered by courts under this prong include:

    a.    The economic and efficient administration of the bankruptcy estate;
    b.    Judicial economy;
    c.    Whether the parties would be able to receive a fair trial in each of the possible venues;
    d.    Whether either forum has an interest in having the controversy decided within its borders;
    e.    Whether the enforceability of any judgment would be affected by the transfer;
    f.    Whether the plaintiff's original choice of forum should be disturbed;
    g.    The impact of the learning curve if the case is transferred; and
    h.    The ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so.

*In re Dunmore Homes, Inc.*, 380 B.R. at 672 (citing *In re Enron Corp.*, 317 B.R. at 638–39 and *In re B.L of Miami, Inc.*, 294 B.R. 325 (Bankr. D. Nev. 2003)). *See also In re Bruno's, Inc.*, 227 B.R. at 324–26 (citing cases); *Kaiser Grp. Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Grp. Int'l, Inc.)*, 421 B.R. 1, 19 (Bankr. D.D.C. 2009) (citing the *Bruno's* factors); *Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*, No. 11-11252-HCM , 2015 WL 65221, at *48–*49 (Bankr. W.D. Tex. 2015) (applying the *Bruno's* factors and denying a motion to transfer venue).

    a.    <u>Economic and Efficient Administration</u>. This factor favors the Debtor; the evidence indicates that the most economic and efficient way to administer the estate would be to keep the case in New Mexico. Debtor's counsel is in Albuquerque and does not have to charge the estate for travel time or costs. Debtor's principals are in Trinidad, about 250 miles from Albuquerque. Albuquerque is much closer to Trinidad than Midland (475 miles from Trinidad), and about the same distance as Amarillo (236 miles from Trinidad). Issues that sometimes arise when analyzing this factor, such as access to capital markets, location of documents or records,

or the need to value or administer real property, are not relevant to this case.

Debtor is a small business debtor. Its "exclusivity period" expires in less than three weeks. 11 U.S.C. § 1121(e). If the Debtor files a plan within the exclusivity period, a frequent occurrence, the Court would be required to hold a confirmation hearing within 45 days thereafter. 11 U.S.C. § 1129(e). The Court does not know how busy the Midland or Amarillo bankruptcy judges are, but is reluctant to transfer the case in light of the potential hearing schedule. The Court has time to hold a confirmation hearing timely.

All indications are that the most efficient and economical venue for the estate is Albuquerque.

      b.    <u>Judicial Economy</u>. This factor also weighs against movants, since it would be more efficient to keep the case in this court rather than require another court to "get up to speed."

      c.    <u>Fair Trial</u>. This factor is neutral. The Court is confident that all parties in interest would receive a fair hearing here, and is equally confident that fair hearings would be provided in Midland and Amarillo.

      d.    <u>Does Either Forum Have an Interest</u>? This factor is neutral. This is a standard small business Chapter 11 case, the outcome of which will have no significant effect on any forum. In the *CORCO* case, in contrast, the Fifth Circuit acknowledged that Puerto Rico had a vital interest in the debtor's reorganization because the debtor was a major supplier of petroleum products to Puerto Rico. 596 F.2d at 1248.

      e.    <u>Enforceability of Any Judgment</u>. Not applicable.

      f.    <u>Disturbing Plaintiff's Original Choice of Forum</u>. This factor, by its nature, weighs in Debtor's favor.

g. <u>Learning Curve</u>. Although this is not a complicated Chapter 11 case, at least some "learning curve" would be involved if the case were transferred, so this factor weighs in Debtor's favor. The Court does not place much weight on this factor, both because the case is relatively simple and because it seems somewhat duplicative of the judicial economy factor.

h. <u>Ability of Interested Parties to Participate</u>. This factor is discussed more fully below in the analysis of the "convenience of the parties" prong. It weighs in favor of movants, at least for a transfer to Midland.

The "interest of justice" factors are summarized below:

| Factor | Albuquerque | Midland | Amarillo |
|---|---|---|---|
| Economic/efficient administration | + | - | - |
| Judicial economy; | + | - | - |
| Fair trial | ... | ... | ... |
| Does a forum have an interest? | ... | ... | ... |
| Enforceability of any judgment | ... | ... | ... |
| Debtor's choice of forum | + | - | - |
| Learning curve if transferred | + | - | - |
| Ability of parties to participate | - | + | - |
| Total | 4 | 1 | 0 |

Overall, the Court finds that the movants have not carried their burden under the "in the interest of justice" prong, and that the factors outlined above weigh in Debtor's favor.

3. <u>Convenience of the Parties</u>. The *CORCO* court outlined six factors to weigh in determining whether the convenience of the parties requires a transfer of venue:

  a. Proximity of creditors of every kind to the court;
  b. Proximity of the debtor to the court;
  c. Proximity of witnesses necessary to the administration of the estate;
  d. Location of assets;
  e. Economic administration of the estate; and
  f. The necessity for ancillary administration if liquidation should result.

596 F.2d at 1247. *See also In re Dunmore Homes, Inc.*, 380 B.R. at 672 (citing the *CORCO* factors); *In re W. Coast Interventional Pain Med., Inc.*, 435 B.R. at 579 (following *CORCO*); *In re Ginco, Inc.*, 70 B.R. 2, 3 (Bankr. D.N.M 1986) (same).

           a.      <u>Proximity of Creditors to the Court</u>.  The first factor focuses on the convenience of the creditors based on their distance from the venue.  "Both number and size [of creditors] . . . should be of equal significance in considering the convenience of the creditors." *CORCO*, 596 F.2d at 1248.

Of the 12 creditors that filed claims, three are located in or near Midland, two others are in the Western District but are 300+ miles from Midland, three more are located elsewhere in Texas, and four are domiciled outside of Texas.

Overall, Midland would be somewhat more convenient for creditors than Albuquerque. The difference between the two locations is not striking however, because Texas is so large that even a Midland venue would require eight of the creditors to travel more than 300 miles to get to court, and a ninth creditor to travel about 160 miles.[7]  The average distance between Midland and the domicile of the six largest creditors is about 570 miles.

Considering the location of creditors' counsel does not change the equation much, given that one local creditor (Felix Chavez & Son) retained an Arizona collection agency and another (Zaclyn Logistics) retained San Antonio counsel.

The proposed alternative venue of Amarillo is even less helpful.  None of the creditors are domiciled in Amarillo.  The closest creditors are about 240 miles away, and the average distance is almost 500 miles.

---

[7] Three creditors, domiciled in Midland or Odessa, Texas, would have little or no travel.

Overall, this factor weighs in movants' favor, but the Court does not find that creditors would suffer significantly if venue remains in New Mexico, especially given the Court's permissive *pro hac vice* rules, the Court's permissive rules concerning telephonic appearance, and the fact that movants have retained highly competent New Mexico counsel.

      b.  <u>Proximity of the Debtor to the Court</u>. When weighing this factor, "[t]he concern is with the corporation's employees who must appear in court . . . ." *Id.* Here, Duran and Gutierrez, the only two shareholders, live in Trinidad.

This factor weighs against transfer. The Debtor chose to file in New Mexico and objected to the motion to transfer venue. Duran and Gutierrez have appeared in Albuquerque. Midland is substantially less convenient to them than Albuquerque.[8] Movants' second choice, Amarillo, is slightly closer to Trinidad than Albuquerque (by 14 miles), but Debtor would either have to obtain new counsel or pay for its current counsel to travel from Albuquerque to Amarillo.

      c.  <u>Proximity of Witnesses Necessary to Administration of the Estate</u>. It is hard to gauge this factor. To date, only Duran and Gutierrez have appeared in court, and they are much closer to Albuquerque than Midland. The next major hearing likely will be on confirmation of a plan of reorganization. It is unclear whether any creditors will oppose confirmation, and if so whether they would wish to have representatives testify. It also is unknown where such representatives live. The same goes for third party fact witnesses and expert witnesses. Because of the unknowns, the Court finds that this factor is neutral.

      d.  <u>Location of Assets</u>. About 75% of Debtor's tangible property is now stored in Amarillo, with the remainder in Trinidad. Debtor's assets are primarily rolling

---

[8] Trinidad is about 250 miles from Albuquerque and about 475 miles from Midland.

stock, readily movable. The assets do not need to be present in any forum for the Debtor to reorganize.

Furthermore, transferring venue to Midland would not bring the Amarillo assets much closer to the courthouse (285 miles versus 239 miles) and would make the Trinidad assets much farther away. A venue transfer to Amarillo would result in debtor assets much closer to the courthouse. There is no evidence in this case, however, that such increased proximity would benefit the estate or creditors. Overall, this factor is neutral with respect to transferring venue to Midland, but weighs slightly in favor of a transfer to Amarillo.

          e.        <u>Economic Administration of the Estate</u>. This is considered by some courts to be the most important factor. *See, e.g., CORCO*, 596 F.2d at 1247. It is a duplicate of one of the "interest of justice" factors, discussed above. *In re Dunmore Homes, Inc.*, 380 B.R. at 672–73. The factor weighs against movants, and is significant; if the reorganization process can be completed more quickly and inexpensively in New Mexico, creditors should obtain a substantial benefit.

          f.        <u>The Necessity for Ancillary Administration if Liquidation Should Result</u>. Most cases do not consider liquidation because "it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization." *Dunmore Homes*, 380 B.R. at 672 (citing *CORCO* and *Enron*). Nevertheless, if the reorganization fails and a Chapter 7 trustee is appointed to liquidate Debtor's assets, the likely path to liquidation would be to retain auctioneers in Amarillo and Trinidad to sell the unencumbered rolling stock. It is hard to see how such a process would be significantly more difficult for a New Mexico trustee than a Texas trustee.

The "convenience" factors are summarized below:

| Factor | Albuquerque | Midland | Amarillo |
|---|---|---|---|
| Proximity of creditors | - | + | - |
| Proximity of the debtor | + | - | - |
| Proximity of witnesses | ... | ... | ... |
| Location of assets | - | - | + |
| Economic administration | + | - | - |
| Ancillary administration if converted? | ... | ... | ... |
| Total | 2 | 1 | 1 |

Weighing all of the "convenience of the parties" factors, the Court finds the three most important ones are the convenience of the creditors, the convenience of the debtor, and the economic administration of the estate. One weighs in movants' favor while the others weigh against them. On balance, movants have not carried their burden of proving that venue should be transferred under this prong of § 1412.

### III. CONCLUSION

Venue is proper in this Court, and the Debtor is entitled to reasonable deference in choosing its forum. Movants have not demonstrated that transferring the case to Midland or Amarillo is required or indicated, either in the interest of justice of for the convenience of the parties. The Court therefore will deny the motion, by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 28, 2015

Copies to:

Christopher M. Gatton,
10400 Academy NE, Ste. 350
Albuquerque, NM 87111

William F. Davis
6709 Academy NE, Ste. A
Albuquerque, NM 87109